STATE of Iowa ex rel. Richard C. TURNER, Attorney General of Iowa, Appellant,

v.

John Richard SCOTT, Appellee.

No. 61093.

Supreme Court of Iowa.

Sept. 20, 1978.

Richard C. Turner, Atty. Gen., and George W. Murray, Sp. Asst. Atty. Gen., for appellant.

Lee H. Gaudineer of Austin, Myers, Peterson & Gaudineer, Des Moines, for appellee.

REES, Justice.

This is an appeal from the judgment and decree of the trial court dismissing the quo warranto action brought by the State of Iowa on the relation of Richard C. Turner, Attorney General, to remove the defendant, John Richard Scott, from his seat as senator from the 24th senatorial district. The trial court dismissed the action on the basis that the court lacked authority to interfere with

the Senate's determination of the defendant's qualifications, unless a substantial violation of constitutional rights had been established. In this appeal, the Attorney General contends he is empowered to bring this action in order to protect the constitutional rights of the people of this state, which he claims were violated by the Senate's seating of an unqualified candidate. We affirm the trial court.

Defendant John Richard Scott was elected to the Iowa Senate from the 24th district by defeating the incumbent, William Winkelman, in the general election in November 1976. During the course of the campaign, the incumbent Winkelman contended as a campaign issue that defendant was not qualified to represent the district, as he did not meet the inhabitancy requirement of the Iowa Constitution. Neither Winkelman nor anyone else contested the election, although the Attorney General did attempt to deny the defendant the issuance of a certificate of election.

On the first day of the following legislative session, the credentials committee of the Senate determined that defendant was qualified to assume the seat to which he had been elected and the vote of the Senate followed, seating the defendant.

On January 11, 1977, the Attorney General instituted the present quo warranto action, challenging the defendant's right to hold the office and claiming the defendant was not qualified since he had not been an inhabitant of the state for the one-year period preceding his election as required by Article III, §§ 4 and 5, of the Iowa Constitution. Scott appeared specially, alleging among other things: that the Attorney General lacked standing to challenge Scott's qualifications; that the Legislature held the sole power to judge the qualifications of its members; and that since no timely election contest had been instituted, the court was without jurisdiction to entertain any challenge to Scott's election. Ruling on the special appearance was deferred and the Attorney General then amended his petition to allege that the seating of Scott denied substantial constitutional rights, notably, equal protection and due process to the electorate of Iowa and especially other senators and potential candidates for the Senate. The defendant then answered, incorporating in his answer the allegations of his special appearance.

At the evidentiary hearing in the trial court, Senator Willits, a member of the credentials committee of the Senate, testified that he, together with certain Senate staff and other members of the Senate, had conducted research on the issues concerning defendant's qualifications and concluded that the Iowa Constitution did not require senators to be inhabitants of the state for one year prior to their election. While it is not apparent from the record that the full Senate relied upon this opinion, the Senate was informed of the opinion and Willits testified the majority of the credentials committee had concluded the only way to challenge Scott's right to hold office was by an election contest instituted pursuant to chapters 57 and 59, The Code. Willits further testified the credentials committee concluded that since no election contest had been initiated, the committee was powerless to question Scott's qualifications. The record further discloses that when the credentials committee report was made available to the Senate that body considered an amendment to the report which would have seated every elected member of the Senate except the defendant. During debate on the merits of the amendment, the qualifications of Scott were discussed; specifically, the question as to whether he was an inhabitant of the state for a one-year period prior to his election as required by the Iowa Constitution. After debate, the amendment lost by a vote of 25 to 24.

With respect to the inhabitancy issue, evidence was introduced at trial which established that the defendant was born and raised in his Senate district, attended the University of Iowa, returned to the family farm during the summers, and, after receiving his law degree, worked for the Justice Department in Washington, D.C., from January 5, 1970 until May 17, 1976. Defendant testified he returned to the family home during holiday and vacation periods.

The defendant further testified that during the years 1970 to 1976 he paid resident income taxes imposed by the District of Columbia or the State of Virginia, and did not pay Iowa income tax during such years. He testified that he held shares in a family farm corporation owning property in Pocahontas County, owned no real estate in Washington or Virginia, owned a car licensed in Washington, and held a District of Columbia driver's license.

Defendant testified he paid fees to the Iowa Clients Security Fund as a government lawyer and had been suspended from the practice of law by this court in 1974 for failure to pay the required fees, but was later reinstated. Although he stated that his recollection was that he had voted by absentee ballot in either the 1972 or 1974 general election in Johnson County, no record of his having voted in either of said elections was made available to the court. Defendant stated it was always his intention to return to Iowa and not to abandon his Iowa domicile.

On the basis of the foregoing record, the trial court dismissed the petition, concluding that the opinion of the credentials committee that the one-year inhabitancy requirement for House members was not required for Senate members was incorrect even though the inhabitancy requirement is not mentioned in Article III, § 5 of the Iowa Constitution, which states that the qualifications of residency and citizenship for House members apply also to Senate members. The court further concluded that the drafters of the Constitution intended the one-year inhabitancy requirement for House members to be applicable to Senate members since the court could find no basis for differentiating representatives and senators.

The court further found the credentials committee conclusion, that the only permissible means by which to challenge the defendant's right to hold office was by an election contest pursuant to chapters 57 and 59, The Code, was binding on the court unless some substantial deprivation of constitutional rights had been established, and

held that the quo warranto action could not be maintained to attack defendant's qualifications since no election contest had been brought under the statutes cited above.

The trial court also held that generally "the courts may not interfere in the judicial functioning of a legislative body acting under Article III, § 7 of the Iowa Constitution", and concluded the Senate's determination to seat Scott was not reviewable by the court unless it was established the action of the Senate deprived someone of substantial constitutional rights. Trial court found the Attorney General had not established a deprivation of substantial constitutional rights and "that such constitutional rights apply to persons only." Although it may have been unnecessary to so determine, the trial court found the defendant was an inhabitant of Iowa for the year preceding his election.

The following issues are presented for review:

(1) Whether the within quo warranto action presents a justiciable controversy properly within the court's jurisdiction.

(2) Whether the plaintiff has standing to maintain this action and whether this issue was preserved for review.

(3) Whether inhabitancy for one year preceding election is a prerequisite qualification in order for a candidate to qualify for the office of state senator.

(4) Whether the trial court erred in determining the defendant met the inhabitancy qualification of the Iowa Constitution.

I. The defendant, Scott, asserts the judicial branch has no jurisdiction to entertain this cause and that, therefore, an action in quo warranto will not lie for the purpose of determining whether a person elected to the office of state senator is qualified to hold that office. He contends that the Iowa Senate has the sole authority to determine the qualifications of its members under Article III, § 7 of the Iowa Constitution, which provides:

"Each house shall choose its own officers, and judge of the qualification, election, and return of its own members. A

contested election shall be determined in such manner as shall be directed by law."

Powers granted to the legislative branch cannot be exercised by the judicial branch of this government. Article III, § 1 of the Iowa Constitution, provides:

"The powers of the government of Iowa shall be divided into three separate departments—the Legislative, the Executive, and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments shall exercise any function appertaining to either of the others, except in cases hereinafter expressly directed or permitted."

■ Inextricably related to the question of whether the judicial branch has jurisdiction to hear and determine this action is the question of whether the case presents a justiciable controversy. In order for there to be a justiciable controversy, there must be a dispute capable of judicial resolution. *Baker v. Carr*, 369 U.S. 186 at 198, 82 S.Ct. 691, 700, 7 L.Ed.2d 663. The question of the existence of a justiciable controversy may involve a determination as to whether there is a live dispute between the parties. *Luse v. Wray*, 254 N.W.2d 324, 329 (Iowa 1977). Generally, also, for a justiciable controversy to exist, a political question should not be involved. In *Baker v. Carr*, 369 U.S. at 217, 82 S.Ct. at 710, 7 L.Ed.2d at 685, the Supreme Court, addressing the same subject matter, said:

"It is apparent that several formulations which vary slightly according to the settings in which the questions arise may describe a political question, although each has one or more elements which identify it as essentially a function of the separation of powers. Prominent on the surface of any case held to involve a political question is found a textually demonstrable constitutional commitment of the issue to a coordinate political department; or a lack of judicially discoverable and manageable standards for resolving it; or the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion; or

the impossibility of a court's undertaking independent resolution without expressing lack of the respect due coordinate branches of government; or an unusual need for unquestioning adherence to a political decision already made; or the potentiality of embarrassment from multifarious pronouncements by various departments on one question."

■ We conclude, on the basis of the aforementioned criteria, that this litigation involves a nonjusticiable political question, the resolution of which is properly left to senatorial prerogative. Accordingly, we do not reach the merits of the Attorney General's claim in this area.

II. We are thus concerned in this appeal with a question of the separation of powers which, as mentioned in *Baker*, is preeminent in any political question. Recognizing such a concept, numerous state courts have held that once the state legislature has been made the judge of the qualifications of its members by their state constitution, the legislature has the sole authority to do so, there being no alternative judicial resolution due to the specific constitutional delegation. *State v. Banks*, 454 S.W.2d 498 (Mo.); *In re McGee*, 36 Cal.2d 592, 226 P.2d 1 (remittitur amended on other grounds); *State ex rel. Schieck v. Hathaway*, 493 P.2d 759 (Wyo.); *Culbertson v. Blatt*, 194 S.C. 105, 9 S.E.2d 218; *Burge v. Tibor*, 88 Idaho 149, 397 P.2d 235; *People ex rel. Douglas v. Barrett*, 370 Ill. 464, 19 N.E.2d 340; *Melland v. Johanneson*, 160 N.W.2d 107 (N.D.). See also, 81A, C.J.S. States § 44 and cases cited therein. We have not gone as far, acknowledging the holdings of the Supreme Court in *Bond v. Floyd*, 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235; *Powell v. McCormack*, 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491; and *Baker v. Carr, supra*. We have thus restrainedly held that "Iowa courts have power to adjudicate substantial claims of deprivation of federal or Iowa constitutional rights by the Houses of the Iowa General Assembly in the exercise of the Houses' election contest powers under § 7, Article III, of the Iowa Constitution". *Luse v. Wray, supra*, 254 N.W.2d at 328.

While the present action involves the exercise of the Senate's power to judge the qualifications of its members, rather than an election contest ipso facto, the same standard for judicial intervention is applicable. In either case, the General Assembly is acting within its constitutionally delegated authority.

Unless the Senate's action deprives someone of his or her constitutional rights, it is not reviewable in this court. Although the following was said by us in relation to a House election contest, it is relevant to the determination of whether the defendant was qualified to be seated as a senator, since the Senate was likewise acting in a judicial capacity:

"Because of an overriding consideration, we find no necessity to resolve either of these claims of plaintiffs. Plaintiffs fail to note that in deciding the election contest the House itself acted as a court, a court created by the Iowa Constitution. Nothing gives disputants any right of appeal to the judicial department from the contest decision of the House. In the exercise of its power, the House could construe §§ 53.8 and 53.17 as it did even though we might or might not construe the sections differently. Likewise in the exercise of its power, the House could decide that certain statutory ballot requirements are mandatory and that deviation from these requirements invalidates the ballots, even though we might hold otherwise in other election contests held in the courts. The House exercised sovereign power, and the courts must respect the prerogative of the House to do so just as the legislature must respect the prerogatives of the executive and the judiciary in the exercise of sovereign powers given to them by the constitution." *Luse v. Wray, supra,* 254 N.W.2d at 330.

Here there is no claim that the Senate considered qualifications other than those enumerated in the Iowa Constitution, as was the case in *Powell v. McCormack, supra,* involving the U.S. House of Representatives and the United States Constitu-

tion. Nor is there a claim that anyone's personal constitutional rights are being "chilled" or infringed upon, as was the case in *Bond v. Floyd, supra,* regarding the Georgia legislature. Here we have only a challenge of an interpretation of the terms of the Iowa Constitution by the Senate acting within the scope of its constitutionally delegated authority. Although the Attorney General claims that the Senate refused to consider whether Scott met the inhabitancy requirement, the record shows that discussion of the defendant's domicile or inhabitancy took place during the debate concerning the amendment to seat all members of the Senate except the defendant. The matters here in controversy were, therefore, completely discussed and considered. While what actually went into this determination is unclear, we feel justified in assuming the Senate based its decision on the merits of defendant's qualifications as dictated by the Iowa Constitution. When alternative bases of legislative action are available, that basis which is constitutional will be presumed. As indicated in *Luse v. Wray,* the fact that a judicial body may or may not have reached a different interpretation does not provide a basis for appeal to the judiciary. Any determination that the Senate did not consider the merits of the qualifications issue would be speculation on our part. Plaintiff has the burden of showing deprivation of substantial constitutional rights and has failed to do so.

This action in quo warranto must eventually rest on a judicial determination that the defendant was not qualified for the office to which he was elected. The Iowa Constitution clearly leaves to the Senate the determination as to whether a member is qualified. We therefore find the controversy to be nonjusticiable and improper for judicial resolution, our holding and rationale expressed in *Luse v. Wray* being dispositive of the question. Absent a showing of deprivation of substantial constitutional rights, we will not review the action taken by the General Assembly under its Article III, § 7 authority. Since none is apparent here, respect for a coordinate branch of the

government in the execution of its constitutionally delegated function compels us to affirm the trial court's dismissal of this action.

III. Having found the initial issue to be dispositive of this case, we deem it unnecessary to address the remaining issues.

In sum, we hold that the Senate, in exercising its sovereign power under Article III, § 7, was apprised of the merits as to whether the defendant met the one-year inhabitancy requirement of Article III and determined and decided to seat the defendant irrespective of any claim to the contrary. No prejudice to anyone's constitutional rights has been shown to have resulted from that decision. Therefore, we must conclude that the within action is based upon a nonjusticiable controversy, and we affirm the trial court in dismissing the plaintiff's petition.

Affirmed.

All Justices concur except McCORMICK, J., who concurs in Divisions II and III and the result only, and ALLBEE, McGIVERIN and LARSON, JJ., who take no part.