STATE of Utah, Plaintiff,

v.

R. Mont EVANS, Janet Rose and Beverly White, Defendants.

No. 870038.

Supreme Court of Utah.

Feb. 23, 1987.

David L. Wilkinson, Atty. Gen., Ralph L. Finlayson, Asst. Atty. Gen., Salt Lake City, for plaintiff.

L. Zane Gill, Ann Wise, M. Gay Taylor (Legal Counsel), John L. Fellows, John F. Clark, Douglas J. Payne, Salt Lake City, for defendants.

HOWE, Justice:

The State, by and through the attorney general, brings this original action for an extraordinary writ, pursuant to Rule 19, Utah Rules of Appellate Procedure, and Rule 65(b)(1), Utah Rules of Civil Procedure, against defendants R. Mont Evans, Janet Rose, and Beverly J. White who are members of the Utah House of Representatives. The State alleges that each defendant either (1) unlawfully holds or exercises public office or (2) does an act which by law works a forfeiture of his or her office.

Defendants were elected by the voters of their respective legislative districts at the general election held on November 4, 1986, and took office on January 12, 1987. When the legislature is not in session, Evans is employed by the Department of Corrections and Rose is employed by the Department of Social Services. They take leave of absence without pay from their employment during legislative sessions and interim committee meetings. U.C.A., 1953, § 67–19–19. Thus, no question of double pay exists. White holds a contract with the Department of Corrections whereby when the legislature is not in session, she works part-time as a correctional technician in what she describes as a "federally funded pilot project designed to find community service jobs for persons convicted in the courts of Utah of alcohol-related driving offenses."

The State claims that the above-described dual service violates the separation of powers requirement of article V, section 1 of the Constitution of Utah. The State seeks a judgment of this Court that each defendant either resign from the House of Representatives or that Evans and Rose terminate their employment in the executive branch and that White terminate her contract.

Evans and Rose have appeared specially and have moved to quash service of process upon them on the ground that article VI, section 8 of the Constitution of Utah and the common law prohibit service of process upon members of the legislature while in session. We deny this motion. They also move to dismiss on the grounds that (1) the issues raised by the State are not justiciable in view of article VI, section 10 of the Utah Constitution, (2) the use of Rule 19, Utah Rules of Appellate Procedure, is inappropriate here, and (3) this case should be remanded to the district court where the State could pursue its action and seek a declaratory judgment. The legisla-

ture, by and through its general counsel, has moved to intervene in this action, which motion we grant, and has further moved to dismiss the State's petition on the ground that under article V, section 1 and article VI, section 10, this Court cannot order defendants to resign from their legislative offices.

## I.

We first treat the propriety of defendants' holding legislative offices. Article VI, section 10 provides:

Each house shall be the judge of the *election and qualifications* of its members, and may punish them for disorderly conduct, and with the concurrence of two-thirds of all of the members elected, expel a member for cause.

(Emphasis added.) Five years after statehood, this Court in *Ellison v. Barnes*, 23 Utah 183, 63 Pac. 899 (1901), was requested by an appellant, a candidate for the state Senate, to declare him elected to such office. A canvassing board had determined that the respondent had received one more vote than the appellant and issued to the respondent a certificate of election. The appellant alleged that seven illegal votes were cast and counted for the respondent, that certain legal votes cast for the appellant were rejected, and that a correct canvass of the votes would show that he was elected. The Court denied the appellant any relief, pointing out that the canvassing board was not made a party to the action and that the appellant did not seek to have a recanvass of the votes, but only a declaration that the appellant had been elected. We declined, stating:

Such a declaration if made would be of no avail to the appellant, nor could any judgment rendered in the case in favor of the appellant be enforced because under the provisions of the constitution, the state senate has the exclusive jurisdiction to determine which of the parties were elected and entitled to a seat in that body.

We relied upon article VI, section 10, quoted above, giving each house the right to be the judge of the election and qualifications of its members, and upon article V, section 1, which provides:

The powers of the government of the State of Utah shall be divided into three distinct departments, the Legislative, the Executive and the Judicial; and no person charged with the exercise of powers properly belonging to one of these departments, shall exercise any functions appertaining to either of the others, except in cases herein expressly directed or permitted.

We cited with approval cases from many states with similar constitutional provisions vesting each house of the legislature with the power to judge the qualifications, elections, and returns of its own members.

In the instant case, we are not concerned with the authority given each house to judge the *election* of a member as we were in *Ellison v. Barnes, supra*. We are here concerned with the other half of the authority conferred by article VI, section 10, to judge the *qualifications* of a member. It does not appear that this Court has heretofore been confronted with a qualifications case. However, in *Lessard v. Snell*, 155 Or. 293, 63 P.2d 893 (1937), the Supreme Court of Oregon declined to declare vacant the office of a state senator who it was claimed also held other state offices in contravention of article II, section 10 of the Oregon Constitution which prohibits any person from holding "more than one lucrative office at the same time." The court based its refusal on article IV, section 11 of the Oregon Constitution, providing that "each house, when assembled, shall ... judge of the election, qualifications, and returns of its own members." The court quoted with approval from *Ellison v. Barnes, supra*, that to pass upon the eligibility of a state senator would be an encroachment upon the constitutional prerogatives of a coordinate branch of government. Said the court:

We apprehend there is no case in the books—certainly none has been cited—where any court has ever ousted a member of a Legislature or directed such co-ordinate branch of the government to accept any person as one of its members.

If such power were vested in the courts, the danger would be obvious.

*Lessard v. Snell, supra,* has been followed and cited with approval in two subsequent Oregon cases, *Monaghan v. School District No. 1, Clackamas County,* 211 Or. 360, 315 P.2d 797 (1957) (refusing to pass upon the eligibility of a school teacher to serve in the legislature), and in *Combs v. Groener,* 256 Or. 336, 472 P.2d 281 (1970) (election contest to have declared that the candidate obtaining the largest number of votes violated the Corrupt Practices Act by his campaign advertisements and was thus ineligible to serve in the legislature).

More recently, the Supreme Court of Iowa in *State ex rel. Turner v. Scott,* 269 N.W.2d 828 (Iowa 1978), affirmed the dismissal by a trial court of a quo warranto action brought by the attorney general of Iowa to remove a state senator from his seat on the ground that he was not qualified to serve since he had not been an inhabitant of the state for one year preceding his election. No one had contested the defendant's election, and on the first day of the legislative session, he was seated as a member. The supreme court affirmed the trial court's holding that generally

> "the courts may not interfere in the judicial functioning of a legislative body acting under article III, § 7 of the Iowa Constitution", and concluded that the Senate's determination to seat [defendant] Scott was not reviewable by the court unless it was established the action of the Senate deprived someone of substantial constitutional rights.

Article III, section 7 of the Iowa Constitution, referred to above, provides that "each house shall choose its own officers, and judge of the qualification, election, and return of its own members." The Iowa Supreme Court pointed out that powers granted to the legislative branch cannot be exercised by the judicial branch in view of article III, section 1 of the Iowa Constitution, providing for separation of powers.

For additional cases where courts have declined to interfere with the seating of a member of a legislative body because of his alleged lack of constitutional requirements to hold office, see 81A C.J.S. *States* § 44, including *Buskey v. Amos,* 294 Ala. 1, 310 So.2d 468 (1975), and *State ex rel. Ford v. Cutts,* 53 Mont. 300, 163 Pac. 470 (1917).

In construing constitutional provisions like our article VI, section 10, giving legislative bodies the right to determine the "qualifications" of its members, courts have construed "qualifications" broadly to also embrace constitutional disqualifications. For example, in *State ex rel. Evans v. Wheatley,* 197 Ark. 997, 125 S.W.2d 101 (1939), an action was brought to oust the defendant from the office of state senator on the ground that he was disqualified from serving because he had been convicted of "an infamous crime" and had been sentenced to serve one year in the state penitentiary for said conviction. The court held that the power given the state senate in the Arkansas Constitution to be the sole judge of the qualifications of its own members also included the power to determine the absence of every constitutional disqualification or ineligibility. Consequently, the court refused to interfere with the action of the senate in seating the defendant. Similarly, in *Raney v. Stovall,* 361 S.W.2d 518 (Ky.App.1962), a state senator during his term of office was appointed a deputy county sheriff. In rejecting an argument that the offices of senator and deputy sheriff were incompatible and that the acceptance of the second office vacated the first, the senate adopted a resolution recognizing the senator as a duly qualified senator. The state treasurer refused to honor warrants for compensation and allowances to which members of the state senate are entitled. The court held that the right of the legislative body to judge the qualifications of its members includes the right to decide finally whether one of them has become disqualified during his term of office, and this decision is not subject to court review. Although it was suggested in that case that the action of the senate constituted such a clear violation of the constitution that the courts should step in and rectify the error, the supreme court held that the fact that the legislature may make a wrong decision is no reason why the judiciary should invade what has been

designated as the exclusive domain of another department of government.

In the instant case, it is urged by the attorney general that defendants are *disqualified* from holding office because their out-of-session employment and contract with a department of the executive branch violate article V, section 1 of the Utah Constitution, mandating separation of powers of the three branches. On the opening day of the current session of the legislature, challenges on that ground were made to the seating of Evans and Rose in the House of Representatives. Following the seating of all other members, the House read briefs and heard arguments of legal counsel representing defendants, as well as the attorney general and general counsel for the legislature. Following what appears to have been a thorough airing of the challenges and the admonition of the Speaker of the House that House members had the duty under article VI, section 10 to determine the qualifications of its members, the House voted to reject the challenges and seated both Evans and Rose. White was seated without any challenge having been interposed.

Constitutional procedures have been followed, and we decline to interfere with or second-guess the action of the House of Representatives. As observed by the court in *State ex rel. Turner v. Scott, supra,* no claim is made that the House considered qualifications or disqualifications other than those constitutionally mandated as was the case in *Powell v. McCormack,* 395 U.S. 486, 89 S.Ct. 1944, 23 L.Ed.2d 491 (1969), involving the United States House of Representatives and the United States Constitution. Further, no claim is made that anyone's personal constitutional rights are being infringed upon as was the case in *Bond v. Floyd,* 385 U.S. 116, 87 S.Ct. 339, 17 L.Ed.2d 235 (1966). In those instances and perhaps others, intervention by the judiciary may be appropriate, but in the instant case, where the issue is whether defendants are constitutionally disqualified from sitting, article VI, section 10 is clear that each house shall make that decision. That duty and obligation were met and discharged here.

The attorney general, urging that *State ex rel. Turner v. Scott, supra,* "appears to be an aberration," relies heavily upon *State ex rel. Jones v. Lockhart,* 76 Ariz. 390, 265 P.2d 447 (1953), and *Hayes v. Gill,* 52 Hawaii 251, 473 P.2d 872 (1970), as providing this Court with a justifiable basis for determining the eligibility of defendants to serve in the House. We have carefully examined those cases and believe that they do not conflict with the well-established rule followed in *State ex rel. Turner v. Scott, supra,* and the other authorities discussed in this opinion. In *State v. Lockhart, supra,* an original action was brought by the attorney general of Arizona in quo warranto seeking the court to adjudge that a state senator who had been appointed by the governor to fill a newly created additional office of state senator was not entitled to hold or enjoy that office. The court held that the terms of additional senate offices created by a constitutional amendment did not commence until such offices could be filled at the next regular election and that prior to such election, there was no vacancy in such office which could be filled by appointment by the governor. Clearly, that case does not concern the qualifications or disqualifications of a member of the legislature, but deals with whether the office legally existed. As the Arizona court itself noted, "[N]or is this exercise of jurisdiction by the courts an encroachment upon the power of the legislature to judge the qualifications of its own members."

In *Hayes v. Gill, supra,* action was brought to require the respondent who was the state's chief election officer to place the petitioner's name on the primary election ballot. The respondent had refused to do so because it appeared that the petitioner on the date of the general election would not have been a resident of the state for three years. The petitioner contended that under the Hawaii Constitution, she was only required to have three years of residency prior to taking office, which requirement she could meet. It is obvious that this case is readily distinguishable from the instant case since the former involved the makeup of a primary election ballot which

precedes by several months any action the legislature could take in seating or not seating members of that body. *Hayes v. Gill, supra,* is in accord with the general rule that constitutional provisions giving legislative bodies the right to determine the election and qualifications of its members do not apply to primary elections. *Combs v. Groener,* 256 Or. 336, 472 P.2d 281 (1970), and cases cited therein.

## II.

We next consider the request of the attorney general that Evans and Rose be required to terminate their out-of-session employment with departments of the executive branch and that White terminate her contract with the Department of Corrections. We decline to determine in this action whether defendants' employment and contract with the executive branch violate the separation of powers clause, article V, section 1. The attorney general has argued that it was in the public interest to have this Court make a speedy determination of the right of defendants to serve in the House of Representatives inasmuch as a legislative session is now in progress and legislation there enacted might be questioned if defendants are ineligible to sit as members of that body. However, those same reasons do not obtain in the case of their employment or contract with the executive branch. We believe the latter question should not be resolved in this proceeding for an extraordinary writ even though we have jurisdiction to do so. It would be more appropriate for this question to be resolved, if the parties desire to pursue it, in a declaratory judgment action in the district court where a full record can be developed regarding the nature and scope of the employment duties of Evans and Rose and the terms of the contract held by White. Consideration can also be given by the parties and the court to the effect of article VI, section 6 of the Constitution of Utah on this issue since the parties in this proceeding have not briefed that question.

The motions to dismiss the petition are granted. Writ denied.

HALL, C.J., STEWART, Associate C.J., and DURHAM and ZIMMERMAN, JJ., concur.