John H. SUNUNU et al.

v.

Robert L. STARK, Secretary of State of New Hampshire.

Civ. A. No. 74–189.

United States District Court, D. New Hampshire.

Oct. 24, 1974.

**1288**

David A. Brock, Perkins, Douglas & Brock, Concord, N. H., for plaintiff.

Joseph A. DiClerico, Jr., Asst. Atty. Gen., Concord, N. H., for defendant.

Before CAMPBELL, Circuit Judge, GIGNOUX and BOWNES, District Judges.

## OPINION

BOWNES, District Judge.

This is an action brought pursuant to 28 U.S.C. §§ 2281 and 2284. Plaintiffs requested that a Three-Judge Court be convened to declare unconstitutional and permanently enjoin the operation of Part Second, Article 29, of the New Hampshire State Constitution, on the grounds that it is violative of the Equal Protection Clause of the Fourteenth Amendment and denies them rights secured by the First Amendment.

Part Second, Article 29, of the New Hampshire Constitution provides in pertinent part:

> [N]o person shall be capable of being elected a senator, . . . who shall not have been an inhabitant of this state for seven years immediately preceding his election, . . ..

The issue presented is whether the seven-year durational residency requirement of Part Second, Article 29, of the New Hampshire Constitution violates either the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, or the fundamental right to interstate travel. A Three-Judge Court was convened and a hearing held on September 17, 1974.

## FACTS

The basic facts are not in dispute. Mr. Sununu is a citizen of the United States and a resident of Salem, New Hampshire. In December of 1969, Sununu established his New Hampshire residency. As a resident of this state, Sununu has played an active role in community affairs. He served as Chairman of the Salem Water and Sewer Planning Committee from 1971 through 1972. In 1972 he was selected to be Chairman of the Salem Planning Board and, in that same year, he was elected to represent Salem in the New Hampshire General Court.[1]

On June 28, 1974, Sununu submitted to the defendant, Robert L. Stark, Secretary of State of New Hampshire, his Declaration of Candidacy for the office of State Senator for District 22. He was then requested to sign an affidavit, required by NH RSA 56:7–a, certifying that he had "been an inhabitant of the state . . . for at least seven years immediately preceding the election at which" he was a candidate. Since Sununu had only been an inhabitant of the State for four years and seven months, he was unable to sign the affidavit. Accordingly, defendant Stark refused to file the proffered Declaration of Candidacy. Plaintiff Sununu then sought to enjoin the defendant from enforcing the relevant provisions of Part Second, Article 29, of the New Hampshire Constitution. His petition for a temporary restraining order was denied on September 5, 1974.

On September 10, 1974, the primary election was held. Although his name was not printed on the ballot, Sununu, via write-in votes, received slightly more than 25% of the votes cast.[2]

The general election for the Senate seat will be held on November 5, 1974. The ballot must be submitted to the printer prior to October 2, 1974. The only bar to Sununu's eligibility, and concomitantly the printing of his name upon the ballot, is that he has not been an inhabitant of New Hampshire for seven years.

Plaintiffs Patrick Corbin and Elsie Vartanian are registered voters in New Hampshire Senatorial District 22. They have stated in sworn affidavits that they are political supporters of Sununu and would vote for him in the general election.

## RULINGS OF LAW

Plaintiff Sununu contends that the seven-year durational residency requirement violates both the Equal Pro-

---

1. Part Second, Article 14, of the New Hampshire Constitution establishes a two-year durational residency requirement as a condition of eligibility for election to the office of State Representative. The New Hampshire House of Representatives is comprised of four hundred members. The Senate is comprised of twenty-four members. The Senate is "the first branch of the legislature." The President of the Senate has all the powers and authorities of the Governor whenever the Governor's chair is vacant. The Senate has the sole power to try impeachments. The Senate reviews and has veto power over legislation that has been passed by the House. The Senate can also initiate legislation for the House's consideration.

2. The result of the primary election for Senate District 22 was as follows: Democratic Nominee, Delbert Downing, received 1519 Democratic votes and 192 Republican write-in votes; Mr. Sununu received 574 Republican write-in votes.

tection Clause of the Fourteenth Amendment and his fundamental right to interstate travel. Whenever it is alleged that a state has violated either the Equal Protection Clause or infringed upon a "fundamental right," the court must determine the appropriate standard of review. Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). The court inquires into three areas: "the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification." Dunn, supra, 405 U.S. at 335, 92 S.Ct. at 999.

■ I do not write on a clean slate.[3] In Chimento v. Stark, 353 F.Supp. 1211 (D.N.H.), aff'd. mem., 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973), the issue presented was whether the constitutionally mandated seven-year durational residency requirement for Governor violated either the First Amendment, the Equal Protection Clause of the Fourteenth Amendment, or the fundamental right to interstate travel. In holding that the residency requirement did not violate any portion of the United States Constitution, this court adopted the "compelling state interest" test.[4] The interests and rights of the present plaintiffs are similar to those involved in Chimento. I therefore conclude that the proper standard of review is the "compelling state interest" test.

■ As in Chimento, I hold that there is a compelling state interest in prescribing durational residency requirements for those candidates who seek state elective office. Counsel for Sununu admitted during oral argument that durational residency requirements are not "per se" unconstitutional. The State has the power, reserved to it by the Tenth Amendment to the United States Constitution and the compelling interest, to impose eligibility requirements upon those who seek state-elective office. The three principal state interests served by the durational residency requirement are: first, to ensure that the candidate is familiar with his constituency; second, to ensure that the voters have been thoroughly exposed to the candidate; and third, to prevent political carpetbagging. See Chimento v. Stark, supra, 353 F.Supp. at 1215.

Finding a compelling state interest, however, does not end my inquiry. The real issue in this case is: When does the length of a durational residency requirement become constitutionally impermissible?

In Shelton v. Tucker, 364 U.S. 479, 488, 81 S.Ct. 247, 252, 5 L.Ed.2d 231 (1960), the Court stated that:

> even though the governmental purpose be legitimate and substantial, that purpose cannot be pursued by means that broadly stifle fundamental personal liberties when the end can be more narrowly achieved. The breadth of legislative abridgment must be viewed in the light of less drastic means for achieving the same basic purpose.

Neither counsel for the plaintiffs nor the defendant have offered a "litmus test" by which the sufficiency of the durational requirement can be judged. This court is also unable to evolve a practical test. This difficulty underscores the basic flaw in plaintiffs' case. If this court were to hold in favor of plaintiffs, it would have to, by implication, conclude that a five-year residency requirement for State Senator is also im-

---

3. Although durational residency requirements for local offices have been held unconstitutional, no court has held unconstitutional a residency requirement for a statewide elective office. See Draper v. Phelps, 351 F.Supp. 677 (W.D.Okl.1972); Walker v. Yucht, 352 F.Supp. 85 (D.C.Del.1972); Hadnott v. Amos, 320 F.Supp. 107 (M.D.Ala.1970), aff'd. mem., 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318 (1971); State ex rel. Gralike v. Walsh, 483 S.W.2d 70 (Mo.1972); Hayes v. Gill, 52 Hawaii 251, 473 P.2d 872 (1970).

4. At oral argument, the State retracted from the position that it had taken in Chimento and agreed that the appropriate standard of review is the "compelling state interest" test.

permissible in length.[5] This decision, without any discernible judicial standards, would be an improper intervention into an area reserved to the states by the Tenth Amendment.

The invocation of the "compelling state interest" test does not put the state into a constitutional straightjacket. As a result of its dissatisfaction with the "compelling state interest" test, the Supreme Court has modified its two-tier approach to the Equal Protection Clause. *See* Gunther, The Supreme Court, 1971 Term-Foreword, The Search of Evolving Doctrine on A Changing Court: A Model for A New Equal Protection, 86 Harv.L.Rev. 1 (1972). The compelling state interest test, although applicable, need not always be applied in "all its rigor." Chimento v. Stark, *supra*, 353 F.Supp. at 1218 (Campbell, J., concurring).

This court is unable to state that the seven-year durational residency requirement is not constitutionally "tailored" to the state's legitimate objectives. Dunn v. Blumstein, *supra*, 405 U.S. at 343, 92 S.Ct. 995, citing Shapiro v. Thompson, 394 U.S. 618, 631, 89 S.Ct. 1322, 22 L.Ed. 2d 600 (1969). I also note that the challenged residency requirement has been a part of the New Hampshire Constitution since 1784. Age and history, however, are not constitutionally determinative and the "dead hand of the past should not be allowed to shape the future." Chimento v. Stark, *supra*, 353 F.Supp. at 1217. Of present day relevance, however, is the fact that the merit and political wisdom of the seven-year requirement have recently been considered by the people of New Hampshire. During the 1964 Constitutional Convention, Resolution Number 28 was adopted. The resolution proposed to reduce the residency requirement for State Senator from seven years to four years. On November 8, 1966, the proposed constitutional amendment was submitted to the voters. Out of 168,273 votes cast, 98,610 voted in favor of the resolution and 69,663 were opposed.[6] Lacking the necessary two-thirds vote, the resolution failed.

During the 1974 Constitutional Convention, the proponents of change, once again, adopted a resolution seeking to reduce the Senator durational residence requirement to four years.[7] This resolution will be submitted to the voters in November of 1978.

It would be presumptuous for this court to engage in judicial hypothesizing in order to hold unconstitutional a provision of the New Hampshire Constitution which has been unchallenged since 1784, considered and rejected by the voters in 1966, and will again be presented to them in 1978. If the durational residency requirement for State Senator "is to be eliminated, it should be accomplished by the voters through the constitutional amending process." Chimento v. Stark, *supra*, 353 F.Supp. at 1217.

Plaintiff Sununu also argues that the seven-year residency requirement violates his fundamental right to interstate travel. Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). Plaintiff relies on Dunn v. Blumstein, *supra*, 405 U.S. at 342, 92 S.Ct. at 1003, which held that it is unconstitutional to force a person "to choose between travel and the basic right to vote." But the right to vote and the right to seek public office are not synonymous. They are of a different nature and involve different state interests. As the court stated in Hadnott v. Amos, 320 F.Supp. 107, 121–122 (M. D.Ala.1970), aff'd. mem., 401 U.S. 968, 91 S.Ct. 1189, 28 L.Ed.2d 318 (1971):

> the role of the candidate and of the voter differ in a democratic society, so that the state may have a compelling interest in requiring residence for

5. Mr. Sununu has been a resident of New Hampshire for only four years and seven months; a five-year residency requirement would also make him ineligible.

6. Brief for Defendant at 17.

7. *Id.* at 17.

candidates that is different from its asserted interest in requiring residence for voters. Participation in the political process and freedom to move from place to place are overriding considerations in the case of the voter. His qualifications are minimal, and he need subject himself to the scrutiny of no one in the performance of his role in selection of public officers. . . . The candidate is one of a much narrower group, in this case one of two persons. He must have the special capacities that will enable him to perform the office he seeks, and his possession or lack of possession of those capacities need to be exposed to those who will make the choice.

I conclude that the State has a compelling inteerst to impose durational residency requirements upon those who seek state-elective office and that such an imposition does not constitutionally interfere with plaintiff's right to interstate travel.

I next consider the claims of plaintiffs Vartanian and Corbin. They allege that the durational residency requirement infringes upon three constitutional rights: first, the right to vote for the candidate of their choice; second, the right to associate for the advancement of their political beliefs; and third, the right to interstate travel.

▮▮▮ Their contention that the residency requirement adversely affects their right to associate and travel interstate is without merit. There has been no infringement upon their right to association. In fact, it was the unrestricted exercise of that right which enabled them to conduct a vigorous and successful write-in campaign in behalf of Sununu. The ineligibility of Sununu has not penalized, even indirectly, those persons who exercised their right to interstate travel.

▮▮▮ . I also reject the claim that their right to an effective vote has been abridged by the application of the resi-

dency requirement. The compelling state interest in prescribing eligibility requirements clearly outweighs the minimal interference with their right to cast an effective vote. I repeat what was stated in Chimento v. Stark, *supra,* 353 F.Supp. at 1218:

> The "right of qualified voters . . . to cast their votes effectively" referred to in Williams v. Rhodes, *supra,* [393 U.S. 23, 31, 89 S.Ct. 5, 21 L.Ed.2d 24 (1968)] remains inviolate. While an isolated few may be *temporarily* precluded from seeking the office of [Senator], this cannot be said to adversely affect the democratic election process or the voters' participation therein.

I therefore find that there has not been a constitutional infringement upon Vartanian's and Corbin's First Amendment rights or their right to interstate travel.

Judgment for the defendant.

So ordered.

LEVIN H. CAMPBELL, Circuit Judge, with whom GIGNOUX, District Judge, joins (concurring).

Although I concur in the result, it seems to me that the compelling state interest standard has been improperly invoked and incorrectly applied. *See* Chimento v. Stark, 353 F.Supp. 1211, 1218 (D.N.H.1973) (concurring opinion). Were the compelling interest test the appropriate measure of the state's residency requirement the outcome here would surely have to be in plaintiffs' favor. Chief Justice Burger has described that standard as "seemingly insurmountable" and noted that the Supreme Court has yet to find its stringent requirements satisfied. Dunn v. Blumstein, 405 U.S. 330, 363–364, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972). Even if one assumes that a state may sometimes justify a law as being necessary to promote a "compelling" interest, a seven year residency requirement for the office of state senator is hardly essential to any such life-and-death end.[1]

---

1. It is unlikely that any durational residency requirement could satisfy the compelling state interest standard. It is difficult to conceive of any set of circumstances which could be

Nor do I think we need paint ourselves into that corner. The Supreme Court has not indicated that the compelling state interest test is to be automatically applied to all candidacy restrictions. The Court has suggested that a candidacy restriction having an appreciable adverse impact on the *right to vote* may itself be unconstitutional. *See* Lubin v. Panish, 415 U.S. 709, 94 S.Ct. 1315, 39 L.Ed.2d 702 (1974); Bullock v. Carter, 405 U.S. 134, 92 S.Ct. 849, 31 L.Ed. 2d 92 (1972); *cf.* Jenness v. Fortson, 403 U.S. 431, 91 S.Ct. 1970, 29 L.Ed.2d 554 (1971). But I doubt if the residency requirement challenged here appreciably interferes with the right of New Hampshire voters to be represented in their state government. The limitation is not aimed at any racial, religious or ethnic minority and does not impinge upon the essentially democratic character of New Hampshire government. Voters who desire to see plaintiff Sununu in the state senate need await his eligibility only a few more years. Meanwhile New Hampshire would permit Sununu to represent them in other elective offices, including that of state representative, and in the interim New Hampshire's aggregate restrictions on senatorial candidates are not so great as to deprive plaintiff voters of adequate sources of representation in the senate. *Cf. Lubin, supra*, 415 U.S. at 716, 94 S.Ct. 1315. In short, any burden placed upon voters by this limitation *seems too minimal* to justify intrusion by a federal court into an area of primary state concern.[2]

Seven years, it is true, may come close to the maximum permissible. Those desiring to vote for Sununu can be required to wait, but not forever. Yet New Hampshire's requirement, as our brother BOWNES observes, is sanctioned by long usage and may be said to fit within the range of traditional restrictions upon candidacy dating back to adoption of the federal Constitution itself.[3] History is, of course, no infallible index of constitutionality, but neither should history be ignored. It may help separate those limitations with which a democratic society can coexist from those which pose uncharted dangers. I am unpersuaded that the fourteenth amendment commits federal courts to removing all possible anomalies in state candidacy

said to compel a specific durational period. A state would be hard put to justify why a few months or years more or less would not equally serve its purposes.

2. The "right to travel" may be said to be implicated in challenges to candidates' durational residency requirements. But I doubt that this "right" requires a state or locality in every instance to ignore differences between those who have lived in a region for a substantial length of time and those who have more recently moved there. The restriction complained of—limited to candidacy for twenty-four senatorial positions—was not designed to discourage interstate travel and does not so "penalize" the exercise of the right to travel as to violate the Constitution. *See Memorial Hospital v. Maricopa County*, 415 U.S. 250, 256–262, 94 S.Ct. 1076, 39 L.Ed. 2d 306 (1974).

3. While New Hampshire is alone in requiring seven years residency for senatorial candidates, Kentucky requires six years, four states require five, and numerous others have requirements of four years or less. In addition, seven states require seven years residency for the offices of governor and lieutenant governor, and one, Missouri, requires ten years. The Book of the States 1974–75, 40–41. *See also* U.S.Const. art. I, § 2, cl. 2; *id.*, § 3, cl. 3; *id.*, art. II, § 1, cl. 5.

Senates in bicameral legislatures of this country are a far cry from the privileged "upper houses" of other nations. R. Luce, Legislative Assemblies 43–85 (1924). Yet while making it clear that a state senate must be popularly elected, the Supreme Court has recognized that there may be some differences between it and the lower house. Reynolds v. Sims, 377 U.S. 533, 576–577, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964). Obviously such differences may not include impermissible ones such as wealth nor election qualifications which discriminate because of race, religion or the like. But qualifications having the effect of requiring senators to be selected from among those citizens who have a more settled attachment to their region, or who are of reasonably mature age have been traditionally accepted, and, whatever their merits, would not seem to offend any constitutional principles.

requirements no matter how sanctioned by tradition and how minor their overall effect. Unless significantly threatening values protected by the Constitution, they are better regulated by the state political process.