Frank **RIVERA**, Plaintiff,

v.

Dolores L. **HAMILTON** et al., Defendants.

Civ. A. No. 74–167.

United States District Court, D. Delaware.

March 17, 1975.

Arlen B. Mekler, Wise, Lindh & Mekler, Wilmington, Del., for plaintiff.

Robert Graham, Dept. of Justice, Wilmington, Del., for defendants.

Before SEITZ, Chief Circuit Judge, and STAPLETON and SCHWARTZ, District Judges.

## OPINION

STAPLETON, District Judge.

Plaintiff, Frank Rivera, Sr., moved to Delaware in May of 1972. On August 12, 1974, he sought the nomination of the Democratic Party for the office of State Senator from Delaware's Third Senatorial District by filing to enter that party's September 12th primary. By letter dated August 15, 1974, the defendant election officials advised Mr. Rivera that his name would not be included on the primary ballot because his election to the Senate of the State of Delaware would be foreclosed by a three-year durational residency requirement imposed by Article 2, Section 3 of the Delaware Constitution, Del.C.Ann.[1]

Mr. Rivera thereafter instituted this suit seeking a declaratory judgment that Delaware's three-year durational residency requirement for State Senators violates the Fourteenth Amendment of the United States Constitution, as well as injunctive relief requiring placement of his name on the primary ballot. Mr. Rivera sought this relief solely on his own behalf and not on behalf of a class.

This three-judge court was convened pursuant to 28 U.S.C. §§ 2281, 2284. On August 23, 1974, it issued a preliminary injunction requiring the inclusion of plaintiff's name on the ballot. Defendants complied; the election was held; Mr. Rivera lost. He now seeks summary judgment pursuant to Rule 56, F.R.Civ. P. Before reaching Mr. Rivera's motion for summary judgment, however, we must first dispose of a motion of the defendants to dismiss this action as moot.

Article III, Section 2, of the United States Constitution limits the power of the federal courts to the adjudication of "cases and controversies" between parties having adverse interests.[2] This limitation requires not only that a litigant have standing to bring an action, but also that "an actual controversy must be extant at all stages . . . not merely at the time the complaint is filed."[3] The election officials in this case maintain that no controversy remains between the parties because no further relief can be given with respect to the 1974 election and because Mr. Rivera will complete his third year as a Delaware resident this spring, many months before the next regular election of a Senator from the Third District in the fall of 1978. Mr. Rivera counters, however, that the controversy which gave rise to his suit is "capable of repetition, yet evading review"[4] and, under a venerable line of Supreme Court cases, is accordingly not moot. Defendants acknowledge that when events occurring after the filing of a suit have eliminated the particular controversy giving rise to the action, the plaintiff may nevertheless proceed if the controversy is "capa-

1. Article 2, Section 3, of the Delaware Constitution of 1897 provides in part:

§ 3. *Qualifications of members*

Section 3. No person shall be a Senator who shall not have attained the age of twenty-seven years and have been a citizen and inhabitant of the State three years next preceding the day of his election and the last year of that term an inhabitant of the Senatorial District in which he shall be chosen, unless he shall

have been absent on the public business of the United States or of this State. . . .

2. *See* Hayburn's Case, 2 Dall. 408, 1 L.Ed. 436 (1792).

3. Steffel v. Thompson, 415 U.S. 452, 459 n. 10, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974).

4. Southern Pacific Terminal Co. v. I. C. C., 219 U.S. 498, 515, 31 S.Ct. 279, 283, 55 L. Ed. 310 (1911).

ble of repetition, yet evading review", but assert that this doctrine is not applicable to the present facts.

The arguments of the parties pose three questions, each of which can be answered with some confidence based on recent decisions of the United States Supreme Court: (1) In an action in which the plaintiff has not been certified as the representative of a class, does "capable of repetition" mean capable of repetition as to the plaintiff or is it sufficient if the alleged grievance is capable of repetition as to others similarly situated? (2) Does the possibility that Mr. Rivera might move from the state, thereafter return, and then seek to run for office within the following three years, or the possibility of a special election prior to May of 1975, make the past controversy capable of repetition as to this plaintiff? and (3) Is this a situation in which the question presented in the case will eternally evade full judicial scrutiny if one in plaintiff's current position is barred from going forward and, if so, does this fact itself suffice to overcome a claim of mootness even in the absence of a showing of a reasonable possibility of similar future injury to the plaintiff?

## I. RELEVANT INJURED PARTY.

In Sosna v. State of Iowa, 419 U.S. 393, 95 S.Ct. 553, 42 L.Ed.2d 532 (1975) the plaintiff was permitted, on behalf of a class, to continue litigating a challenge to an Iowa durational residency restriction on divorce, even though by the time her case had reached the Supreme Court, she had obtained a divorce elsewhere and was, in any event, not then ineligible under the Iowa provision attacked. The Supreme Court based its mootness ruling squarely on the facts that (1) the plaintiff had been certified as the representative of a class at a time when she still had an actual controversy with the defendant, (2) members of the class continued to be "aggrieved" by the allegedly unconstitutional statute and (3) "the issue sought to be litigated escapes full

appellate review at the behest of any single challenger." In the course of its opinion, the Court had occasion to comment upon the two prior cases most frequently associated with the "capable of repetition, yet evading review" doctrine:

In Southern Pacific Terminal Co. v. ICC, 219 U.S. 498, [31 S.Ct. 279, 55 L.Ed. 310] (1911), where a challenged ICC order had expired, and in Moore v. Ogilvie, 394 U.S. 814, [89 S.Ct. 1493, 23 L.Ed.2d 1] (1969), where petitioners sought to be certified as candidates in an election that had already been held, the Court expressed its concern that the defendants in those cases would be expected again to act contrary *to the rights asserted by the particular named plaintiffs involved*, and in each case the controversy was held not to be moot because the questions presented were "capable of repetition, yet evading review." That situation is not presented in appellant's case, for the durational residency requirement enforced by Iowa *does not at this time bar her* from the Iowa courts. Unless we were to speculate that she may move from Iowa, only to return and later seek a divorce within one year from her return, the concerns that prompted this Court's holdings in Southern Pacific and Moore do not govern appellant's situation. . . .

419 U.S. at 399, 95 S.Ct. at 557 (emphasis supplied). The Court concluded:

If appellant had sued only on her own behalf, both the fact that she now satisfies the one-year residency requirement and the fact that she had obtained a divorce elsewhere would make this case moot and require dismissal. . . .

*Id.*

Thus, the *Sosna* case strongly suggests, although by way of dictum, (1) that the doctrine relied upon by Mr. Rivera is applicable in a non-class action context only when the plaintiff is able to show a reasonable possibility that *his* rights may again be infringed in the

same manner and (2) that the possibility of future injuries to others similarly situated is relevant only in a class action context. One month after *Sosna,* the Supreme Court had occasion squarely to so hold. In Board of School Commissioners v. Jacobs,[5] six high school students attacked as violative of the First and Fourteenth Amendments regulations of their school district relating to the publication and distribution of student newspapers. Upon being advised at oral argument that all of the plaintiffs had graduated, the Court dismissed the action as moot despite the fact that the challenged regulation remained in effect and was being applied to other students in the district:

> . . . [I]n these circumstances, it seems clear that a case or controversy no longer exists between the named plaintiffs and the petitioners with respect to the validity of the rules at issue. The case is therefore moot unless it was duly certified as a class action pursuant to Rule 23, Federal Rules of Civil Procedure, a controversy still exists between the petitioners and the present members of the class, and the issue in controversy is such that it is capable of repetition yet evading review.

420 U.S. at 129, 95 S.Ct. at 850.

Based on *Sosna* and *Jacobs,* we are confident that in the case at hand the Supreme Court would look solely to whether the alleged grievance was reasonably capable of repetition with respect to Mr. Rivera himself.[6]

## II. POSSIBILITY OF RECURRING INJURY TO PLAINTIFF.

Mr. Rivera could find himself again aggrieved by the durational residency

requirement which he attacks only (1) if the office of State Senator from the Third Senatorial District becomes vacant for some reason and a special election is held prior to May of this year, or (2) if he moves to another state, later returns to Delaware to live, and then decides to run for the State Senate within three years of his return. We are satisfied, however, that these remote possibilities are not sufficient under the criteria established by the Supreme Court to warrant our deciding the merits of this case.

In DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974), the plaintiff attacked the admissions policy of the defendant law school and sought an order directing that he be admitted as a student. Pursuant to a grant of interim relief, the plaintiff was admitted and when the case was argued before the Supreme Court he was in his final semester. The Court held that the controversy was not realistically capable of repetition with respect to this particular plaintiff and that the case was moot, despite a remote possibility that he might fail to complete a semester and thereafter be required to run the admissions gauntlet once again. This possibility, which was described by the dissent in the following terms, seems no less likely than the possibility of a special election in our case:

> . . . Many weeks of the school term remain, and petitioner may not receive his degree despite respondents' assurances that petitioner will be allowed to complete this term's schooling regardless of our decision. Any number of unexpected events— illness, economic necessity, even academic failure—might prevent his

5. 420 U.S. 128, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975).

6. See also DeFunis v. Odegaard, 416 U.S. 312, 94 S.Ct. 1704, 40 L.Ed.2d 164 (1974). The cases relied upon by Mr. Rivera were either class actions, e. g., Rosario v. Rockefeller, 410 U.S. 752, 93 S.Ct. 1245, 36 L.Ed. 2d 1 (1973), or were situations in which recurrence of injury to the plaintiff was significantly more likely than in this case, e. g., Moore v. Ogilvie, 394 U.S. 814, 89 S.Ct. 1493, 23 L.Ed.2d 1 (1969) ; American Party v. White, 415 U.S. 767, 94 S.Ct. 1296, 39 L. Ed.2d 744 (1974) ; Storer v. Brown, 415 U. S. 724, 94 S.Ct. 1274, 39 L.Ed.2d 714 (1974).

graduation at the end of the term. Were that misfortune to befall, and were petitioner required to register for yet another term, the prospect that he would again face the hurdle of the admissions policy is real, not fanciful; . . .

416 U.S. at 348, 94 S.Ct. at 1721 (Brennan, J., dissenting).

In Hall v. Beals, 396 U.S. 45, 90 S.Ct. 200, 24 L.Ed.2d 214 (1969), the plaintiff attacked a Colorado durational residency requirement for voting. By the time the case reached the Supreme Court, the plaintiff was qualified. After discussing Moore v. Ogilvie, and the "capable of repetition, yet evading review" doctrine, the Court concluded:

Here, by contrast, the appellants will face disenfranchisement in Colorado in 1972 only in the unlikely event that they first move out of the State and then re-establish residence there within two months of the presidential election in that year. Or they may take up residence in some other State, and in 1972 face disqualification under *that* State's law. But such speculative contingencies afford no basis for our passing on the substantive issues the appellants would have us decide . . ..

396 U.S. at 49, 90 S.Ct. at 202 (emphasis in original).

The possibilities for future disenfranchisement of the plaintiff in the *Hall* case, while providing no basis for review, were nevertheless more likely to occur than the possibility of Mr. Rivera's again seeking election to Delaware's Senate at a time when he would again lack the required residency.[7]

## III. IMPOSSIBILITY OF COMPLETE LITIGATION.

Mr. Rivera's final contention is that, regardless of the possibility of future injury to him, this Court must pass upon the validity of Delaware's durational residency requirement in this case because to decline to do so would mean that as a practical matter the constitutionality of the provision is incapable of being completely litigated.[8] While the argument has appeal, we conclude that it would not be accepted by the Supreme Court.

We accept for present purposes Mr. Rivera's contention that, if his case is held to be moot, other candidates hereafter suing solely on their own behalf will be unable to litigate the constitutionality of the residency requirement through the Supreme Court level before their cases also become moot.[9] We do not, however, accept Mr. Rivera's suggestion that, because of an inability to meet the requirement of Rule 23(a) that the class be so numerous that joinder of all is impracticable, his case could not have been brought and litigated to conclusion as a class action. In Brockington v. Rhodes,[10] the plaintiff was in a situation much like that of Mr. Rivera. He had been refused a place on the ballot as an independent candidate for the United States House of Representatives because he had been unable to submit a petition with a sufficient number of voter signatures on it to meet the requirements of the applicable Ohio statute. He had sued in the Ohio courts on his own behalf to compel inclusion of his name on the ballot. The election had taken place before his case reached the United States Supreme Court and was there

7. See also Sosna v. Iowa, *supra.*

8. Should the case become moot at any time prior to the completion of appellate review, vacation of the lower court ruling, whether favorable or unfavorable, would be mandated See, e. g., Board of Commissioners v. Jacobs, 420 U.S. 128, 130, 95 S.Ct. 848, 43 L.Ed.2d 74 (1975).

9. While a candidate who secured the same interim relief as Mr. Rivera and subsequently won the election might still have a personal "case or controversy", we recognize that the cloud created by Delaware's durational residency requirement would prove a difficult hurdle for most candidates.

10. 396 U.S. 41, 90 S.Ct. 206, 24 L.Ed.2d 209 (1969).

dismissed as moot. The court commented as follows on the avenues which had been opened to plaintiff:

> . . . [I]n view of the limited nature of the relief sought, we think the case is moot because the congressional election is over. The appellant did not allege that he intended to run for office in any future election. He did not attempt to maintain a class action on behalf of himself and other putative independent candidates, present or future. He did not sue for himself and others similarly situated as independent *voters*, as he might have under Ohio law. . . .[11]

Similarly, we believe that if this action is held to be moot, a subsequently aggrieved candidate should be able to structure a case which would avoid the same fate.

Even were this not so, however, we read recent Supreme Court cases as precluding this Court from winking at the requirements of Article III. In Richardson v. Ramirez, 418 U.S. 24, 94 S.Ct. 2655, 41 L.Ed.2d 551 (1974), the Supreme Court made the following observations in the context of a challenge to a California statute disenfranchising those convicted of felonies:

> . . . While the situation in Moore v. Ogilvie, supra, was described as "capable of repetition, yet evading review," 394 U.S., at 816, 89 S.Ct. 1493, that involved here can best be described, in view of the Supreme Court of California's decision against the state officials and their obligation to follow the law as laid down by that court, as "incapable of repetition," and therefore evading review. *There are thus the strongest sort of practical arguments,* as well as the language of Moore v. Ogilvie, supra, which militate against a conclusion of mootness in this case.

But purely practical considerations have never been thought to be controlling by themselves on the issue of mootness in this Court. While the Supreme Court of California may choose to adjudicate a controversy simply because of its public importance, and the desirability of a statewide decision, we are limited by the case and controversy requirement of Art. III to adjudication of actual disputes between adverse parties.[12]

Similarly, in the even more recent case of Sosna v. Iowa, *supra*, the Supreme Court stated:

> . . . A blanket rule under which a class action challenge to a short durational residency requirement would be dismissed upon the intervening mootness of the named representative's dispute would permit a significant class of federal claims to remain unredressed for want of a spokesman who could retain a personal adversary position throughout the course of the litigation. *Such a consideration would not itself justify any relaxation of the provision of Art. III* which limits our jurisdiction to "cases and controversies," but it is a factor supporting the result we reach if consistent with Art. III. . . .

419 U.S. at 401 n. 9, 95 S.Ct. at 558 (emphasis supplied).

Thus, it would appear that the assertion that a question presented may eternally evade review is insufficient to overcome a claim of mootness and litigation of this type may not proceed unless there is a reasonable possibility of repetition of the complained-of injury to the named plaintiff or to some member of a class he represents. That element being absent here, defendant's motion to dismiss on grounds of mootness must be granted.[13]

---

11. 396 U.S. at 43, 90 S.Ct. at 207 (emphasis in original).

12. 418 U.S. at 35, 94 S.Ct. at 2662 (emphasis supplied).

13. In view of the Court's conclusion that this case is moot, treatment of the merits would be inappropriate. The Court notes, however, recent Supreme Court affirmances of three-judge District Court decisions uphold-

SEITZ, C. J., concurs only because he feels that the most recent Supreme Court opinions dictate a dismissal of the complaint for mootness.

MURRAY M. SCHWARTZ, District Judge (dissenting).

The majority opinion is most persuasive. However, the effect of their holding is to engraft a limitation upon the "capable of repetition, yet evading review" doctrine. The limitation is that in *all* cases "capable of repetition" for mootness purposes means capable of repetition only as to the plaintiff or the class he represents. The acknowledged result of the majority pronouncement is that "a question presented may eternally evade review" irrespective of the nature of the right affected by the issue presented for decision.[1] The Supreme Court has made no such broad sweeping pronouncement.

Sosna v. State of Iowa, *supra*, treated the constitutionality of a state durational residency requirement for divorce while Board of School Commissioners v. Jacobs, *supra*, addressed the validity of regulations imposed upon a defunct high school newspaper where all plaintiffs had graduated from high school. Both cases came to the Supreme Court as class actions. The language employed by the Supreme Court was necessarily addressed to the only thing before it,

viz., a class action. Any other reading of *Sosna* and *Jacobs*, including that employed by the majority, compels a conclusion that the Supreme Court has held *contra* to its "voting cases" of Rosario v. Rockefeller, *supra*, and Storer v. Brown, *supra*.

In *Rosario*, decided in 1973, a class action and individual action were consolidated, but every member of the class would have been eligible to vote at the next primary election.[2] Thus, if the within majority opinion is correct, *Rosario* was moot. But, the Supreme Court held the matter was not moot and disposed of the issue in a footnote:

"Although the June primary election has been completed and the petitioners will be eligible to vote in the next scheduled New York primary, this case is not moot, since the question the petitioners raise is ' "capable of repetition, yet evading review" ' [Dunn v. Blumstein, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972); Moore, Southern Pacific, *supra*]." 410 U.S. at 756 n. 5, 93 S.Ct. at 1249.

In *Storer*, a non-class action, decided only nine and one-half months before *Sosna* and approximately eleven months before *Jacobs*, the Supreme Court disposed of a case upon an issue which would be moot under the majority formulation. The issue could not recur as to the named plaintiffs.[3] Nonetheless,

---

ing residency requirements for candidates for public office. Sununu v. Stark, —— U.S. ——, 95 S.Ct. 1346, 43 L.Ed.2d 434 (1975), affirming, 383 F.Supp. 1287 (D.N.H.1974) (seven-year residency requirement for state senatorial candidates); Kanapaux v. Ellisor, 419 U.S. 891, 95 S.Ct. 169, 42 L.Ed2d 136 (1974) (five year residency requirement for gubernatorial candidates); Chimento v. Stark, 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed. 2d 39 (1973), affirming, 353 F.Supp. 1211 (D.C.1973) (seven year residency requirement for gubernatorial candidate).

1. In view of the decisional law on the subject of mootness, this writer is precluded from taking a position on whether the existence

of an Article III "case or controversy" should turn upon the nature of the right(s) affected by the issue presented. Similarly, this writer is precluded from taking a position as to whether "case or controversy" should be the threshold question in deciding mootness.

2. 410 U.S. at 755 n. 4, 93 S.Ct. at 1245.

3. In Part I, the Court held that Section 6830(d) validly barred appellants Storer and Frommhagen from the ballot. The Court therefore found that "there is no need to examine the constitutionality of the other provisions of the Elections Law . . . ." 415 U.S. at 736, 737, 94 S.Ct. at 1282. Sec-

the Supreme Court relegated the mootness issue to a footnote and explained:

"The 1972 election is long over, and no effective relief can be provided to the candidates or voters, but this case is not moot, since the issues properly presented, and their effects on independent candidacies, will persist as the California statutes are applied in future elections. This is, therefore, a case where the controversy is 'capable of repetition, yet evading review.' [*Rosario, Dunn, Moore, Southern Pacific, supra.*] *The 'capable of repetition, yet evading review' doctrine, in the context of election cases, is appropriate when there are 'as applied' challenges as well as in the more typical case involving only facial attacks.* The construction of the statute, an understanding of its operation, and possible constitutional limits on its application, will have the effect of simplifying future challenges, thus increasing the likelihood that timely filed cases can be adjudicated before an election is held." 415 U.S. at 737, n. 8, 94 S.Ct. at 1282. (emphasis added)

In *Storer's* companion case, *American Party, supra,* the mootness issue was disposed of by citation to *Rosario* and *Storer,* 415 U.S. at 770 n. 1, 94 S.Ct. 1704.

If the Supreme Court intended to overrule its mootness pronouncements in *Rosario* and *Storer* in the class action cases of *Sosna* or *Jacobs,* one would think it would have been explicit. I would therefore conclude the Supreme Court did not intend the language of *Sosna* and *Jacobs* to be applicable to non-class action election cases. Accordingly, I would find the matter is not moot and would proceed to a determination on the merits.

tion 6830(d) is a durational requirement of independence from political parties. Absent a speculative change in appellants' circumstances, this provision could no longer have affected appellants. *See* 415 U.S. at 737 n. 8., 94 S.Ct. 1274, and *Appendix,* p. 752 and p. 1287.