John HANKINS, Plaintiff,

v.

STATE OF HAWAII, and John W. Waihee, Lieutenant Governor of the State of Hawaii in his capacity as Chief Election Officer of the State of Hawaii, Defendants.

Civ. No. 86–0508.

United States District Court,
D. Hawaii.

Aug. 1, 1986.

Randolph R. Slaton, Honolulu, Hawaii, for plaintiff.

Charleen M. Aina, Deputy Atty. Gen., Honolulu, Hawaii, for defendants.

## AMENDED ORDER DENYING MOTION FOR PRELIMINARY INJUNCTION

FONG, Chief Judge.

Plaintiff's Motion for a Temporary Restraining Order came on for hearing before this court on July 22, 1986. Randolph Slaton appeared on behalf of plaintiff. Charleen Aina appeared on behalf of the defendants. The court, having considered the motion and the memoranda submitted in support thereof and in opposition thereto, having heard the arguments of counsel, and being fully advised as to the premises herein, finds as follows:

### FACTS

Plaintiff, who has resided in Hawaii for 17 years, but for only three years immediately preceding this date, filed his nomination papers as a candidate for Governor of Hawaii in the Republican party primary scheduled for September 20, 1986. Defendant Waihee, in his capacity as the Chief Election Officer of the State, objected to the papers pursuant to Hawaii Rev.Stat. § 12–8(a), on the basis that plaintiff did not meet the durational residence requirement of the Hawaii Constitution.

Article V, Section 1 of the Constitution of the State of Hawaii provides:

No person shall be eligible for the office of governor unless the person shall be a qualified voter, have attained the age of thirty years and have been a resident of this State for five years immediately preceding the person's election.

After an administrative hearing was held on July 16, 1986, defendant Waihee's objections were upheld. Plaintiff, having thereby exhausted his administrative remedies, filed this lawsuit, seeking declaratory and injunctive relief.

In the instant motion, plaintiff asks the court to compel defendants to include his name as a candidate for governor on the list of candidates seeking nomination in the Republican primary. Because plaintiff requests mandatory injunctive relief, the court will treat the motion as seeking a preliminary injunction.

### DISCUSSION

A. *The test for injunctive relief*

The Ninth Circuit has developed a multi-pronged test for the propriety of preliminary injunctive relief. A movant must establish either (1) probable success on the merits *and* possible irreparable injury *or* (2) sufficiently serious questions going to the merits to make them fair ground for

litigation *and* a balance of hardships tipping decidedly toward the party requesting the preliminary relief. *Aguirre v. Chula Vista Sanitary Service,* 542 F.2d 779, 781 (9th Cir.1976) (emphasis in original). As the court later noted, "These are not really two entirely separate tests, but they are merely extremes of a single continuum." *Benda v. Grand Lodge of Int'l Assoc. of Machinists & Aerospace Workers,* 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).

Because July 22, 1986, the date set for hearing of the instant motion, is the deadline for filing nomination papers to run in the 1986 gubernatorial primary election, it is clear that plaintiff has demonstrated the possibility of irreparable harm. The timely placing of his name on the primary election ballot will depend entirely on the outcome of this hearing.

Moreover, the court finds that the balance of hardships tips decidedly in plaintiff's favor. Although defendants claim that "delay or confusion" arising out of the instant lawsuit "could irreparably harm the voters' right to 'cast their votes effectively,' " the court believes that any harm to the State, in the event that the motion is granted, would amount to no more than administrative inconvenience. Of the parties before the court, plaintiff stands to lose considerably more than do defendants.

Convinced, therefore, that the plaintiff has satisfied half of the test for injunctive relief at either end of the continuum, this court turns to an analysis of the merits of plaintiff's claims. It is self-evident that, in order to obtain the injunctive relief sought, plaintiff must demonstrate at least the existence of sufficiently serious questions to make them fair ground for litigation.

### B. *Merits of the Complaint*

Despite the various labels affixed to it by the parties, at bottom this dispute is one arising under the equal protection clause of the Fourteenth Amendment. Reduced to its simplest terms, the controversy at hand involves whether a state may discriminate against recently-arrived residents who wish to enter an upcoming gubernatorial election. Resolution of this issue will depend upon the reason for the rule; that explanation, in turn, will be given more or less weight according to the rights of the would-be candidates that are allegedly infringed by the regulation.

### 1. *The appropriate standard of review*

█ In examining an equal protection claim, the court considers three elements: the character of the classification in question; the individual interests affected by the classification; and the governmental interests asserted in support of the classification. *Dunn v. Blumstein,* 405 U.S. 330, 92 S.Ct. 995, 999, 31 L.Ed.2d 274 (1972).

█ With respect to an "ordinary" equal protection case, a court will uphold the challenged law as long as it has some rational basis, or as long as it is reasonably related to a legitimate governmental concern. *McGowan v. Maryland,* 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393 (1961). However, if the challenged law creates a suspect classification or impinges upon a fundamental constitutional right, the legislative act is subject to heightened scrutiny. In such cases, the law must be shown to be necessary to promote a compelling governmental interest. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 1331, 22 L.Ed.2d 600 (1969). Accordingly, the first question for this court is whether the heightened standard of scrutiny should be applied in the instant case.

The United States Supreme Court has not yet ruled directly on the validity of durational residency requirements for candidacy for public office. Annot., 65 A.L. R.3d 1048, 1053 (1975 and Supp.). Most of the state and federal courts that have addressed the issue have held that strict scrutiny should be applied to such requirements, ostensibly because such restrictions affect the right to travel, the right to vote, and/or the right of political expression and association. *Joseph v. City of Birmingham,* 510 F.Supp. 1319, 1322 (E.D.Mich. 1981) (thorough discussion of methods of analyzing durational residence require-

ments). Indeed, the Ninth Circuit has embraced such a test. *Howlett v. Salish and Kootenai Tribes,* 529 F.2d 233, 242 (9th Cir.1976).

■ Nevertheless, a number of recent developments counsel against facile acceptance of the proposition that durational residence requirements are unquestionably entitled to stricter scrutiny. First, as plaintiff acknowledges, it is far from settled that the right to hold public office is itself a fundamental constitutional right.

> The Court has not heretofore attached such fundamental status to candidacy as to invoke a rigorous standard of review.... Of course, not every limitation or incidental burden on the exercise of voting rights is subject to a stringent standard of review.

*Bullock v. Carter,* 405 U.S. 134, 92 S.Ct. 849, 855–56, 31 L.Ed.2d 92 (1972). Restrictions on candidates, as opposed to voters, do not always demand compelling state interest analysis. *Beil v. City of Akron,* 660 F.2d 166, 169 (6th Cir.1981). Hawaii has upheld a similar residency requirement for legislators on mere rationality review. *Hayes v. Gill,* 52 Haw. 251, 473 P.2d 872 (1970), *app. dismissed as moot,* 401 U.S. 968, 91 S.Ct. 1200, 28 L.Ed.2d 319 (1971).

■ Second, although durational residence requirements for *voters* clearly infringe the personal right to travel, *Dunn v. Blumstein, supra,* the mere fact that an individual cannot immediately become governor when he moves to a new state does not automatically trigger a higher standard of review. A burden on interstate travel in cases such as this is impermissible only when it imposes a "penalty" on the new arrival. *Attorney General of New York v. Soto-Lopez,* — U.S. —, —, 106 S.Ct. 2317, 2321, 90 L.Ed.2d 899 (1986). Moreover, courts must examine the *nature* of the penalty in passing on the validity of the regulation at issue. *Walker v. Yucht,* 352 F.Supp. 85, 97 (D.Del.1972).

■ Unlike the situation in *Dunn,* the requirement at issue here does not force a person to "choose between travel and the basic right to vote," because there is no analogous basic right to candidacy. *Id.*

Although a new resident is "penalized" in the sense that he is precluded from running for governor for five years, the activity in which he seeks to engage is not itself a fundamental right. Accordingly, because the law hinders the exercise of no fundamental right, the durational residence requirement does not truly penalize the right to travel.

Finally, although the Supreme Court has summarily affirmed two cases which purported to apply the "compelling interest" test, *see Chimento v. Stark,* 353 F.Supp. 1211 (D.N.H.) (three judge court), *aff'd,* 414 U.S. 802, 94 S.Ct. 125, 38 L.Ed.2d 39 (1973); *Sununu v. Stark,* 383 F.Supp. 1287 (D.N. H.1974) (three judge court), *aff'd,* 420 U.S. 958, 95 S.Ct. 1346, 43 L.Ed.2d 435 (1975), recent comments from the Court have indicated that heightened scrutiny in such cases may be unnecessary. Durational residence requirements have apparently been referred to as one of the rare "instances in which length of residence could provide a legitimate basis for distinguishing one citizen from another" under rationality review. *Zobel v. Williams,* 457 U.S. 55, 102 S.Ct. 2309, 2318, 72 L.Ed.2d 672 (1982) (Brennan, J., concurring). In discussing the related situation of a "waiting period" prior to candidacy, the Court mentioned *Chimento, supra,* and commented, "We conclude that this sort of insignificant interference with access to the ballot need only rest on a *rational* predicate in order to survive a challenge under the Equal Protection Clause." *Clements v. Fashing,* 457 U.S. 957, 102 S.Ct. 2836, 2846, 73 L.Ed.2d 508 (plurality opinion), *reh. denied,* 458 U.S. 1133, 103 S.Ct. 20, 103 S.Ct. 20, 73 L.Ed.2d 1404 (1982) (emphasis supplied).

In short, before abandoning the traditional equal protection standard of review, a court must determine whether a state's limitation has a "real and appreciable impact" upon the fundamental rights allegedly affected. *Antonio v. Kirkpatrick,* 579 F.2d 1147, 1149 (8th Cir.1978); *see also Joseph, supra* (discarding heightened scrutiny in durational residency case). The fact that, under the Constitution of the State of Hawaii, an individual must set aside his

plans to become Governor for five years after moving to the State cannot seriously be said to constrict the freedom of interstate travel. This court finds that the relationship between the requirement at issue and the right to travel is "too attenuated to warrant invocation of the strict standard of scrutiny." *Antonio, supra,* at 1149.

Accordingly, because plaintiff has not satisfied the court that the residence requirement infringes a fundamental constitutional right,[1] and because the court is not persuaded that strict scrutiny is warranted by the facts of the instant case, the court will apply traditional equal protection analysis to the provision at issue.

### 2. *Rationality Analysis*

■ Under the lower standard, the court must uphold the law if it has some rational basis or is reasonably related to a legitimate state end. In this case, the State of Hawaii asserts that the durational residence requirement was adopted "to ensure that the complex affairs of Hawaii's state government would be understood" by all candidates for governor. That is, the law attempts to prevent candidates from rashly undertaking to assume the responsibilities of the State's highest elective office.

The State has a legitimate interest in maintaining a responsive and responsible government. Indisputably, candidates who possess a familiarity with, and an awareness of, local conditions are a commodity desirable to state residents. That the voters are more likely to come into personal contact with the candidates, prior to election, if a residency requirement is imposed is also self-evident.

At issue here is more than simply a desire on the part of the chief election officer that gubernatorial candidates be known to the electorate. The State has a strong interest in the assurance that its governor will be a person who understands the conditions of life in Hawaii. This concern has "particular relevance in a small and com-

paratively sparsely populated state." *Chimento, supra,* at 1215. Notwithstanding his best intentions to the contrary, a prospective candidate who has spent a significant length of time in residence away from this State (even though he had previously lived in the Islands for more than ten years) has arguably lost contact with the crises, the culture, and the people of Hawaii. The issue before this court is simply whether the State can seek to correct for such distance-born insensitivity by imposing a five-year durational residency requirement.

Admittedly, the shortcomings of candidates who show themselves inadequately educated as to relevant issues will become apparent to the voters through the mass media. In this electronic age, microscopic examination of any candidate for major public office is bound to accentuate qualitative flaws quite rapidly. Several courts have accordingly invalidated durational residence restrictions on the theory that "if a short sojourn in the community is considered to be a disqualification, the electorate may voice its sentiment at the ballot box." *See, e.g., Mogk v. City of Detroit,* 335 F.Supp. 698, 701 (E.D.Mich.1971).

Nevertheless, the fact, if true, that a residence requirement is not the *only* method of achieving the state goal does not automatically subject it to invalidation. In rationality review, choosing among alternatives is a task for the State, and not for the federal courts. *Walker, supra,* at 98. This court's inquiry must end where, as here, it finds that there is a rational basis for the challenged law.

### 3. *Strict Scrutiny*

■ However, mindful that the precedents are far from clearly established, this court will also consider whether Hawaii has shown a compelling state interest in the durational residency requirement. The court assumes for purposes of this discus-

---

1. Plaintiff also claims that the law violates his "constitutional right to demonstrate satisfaction in the democratic process." Complaint at ¶ 5. Plaintiff neither explains the nature of this sup-
posed right, nor does he offer any argument as to its applicability to the instant case. Consequently, the court finds no basis for recognizing the existence of such a right here.

sion that plaintiff has been able to establish the existence of a fundamental constitutional right which is infringed by the challenged law.

Once again, the court notes that the Supreme Court has not ruled directly on the issue of durational residence requirements for political candidates. Twice in the early 1970's, however, the Court summarily affirmed three-judge district courts which had found that such requirements served compelling state interests and thus met the higher standard. *Chimento, supra* (candidate for governor); *Sununu, supra,* (candidate for state senator).

> While it is true that summary affirmances must be read with care, there can be no doubt that these … cases hold that some durational residency requirements are constitutionally permissible.

*City of Akron, supra,* at 168 (upholding requirement). The Fifth Circuit, applying similar reasoning, likewise relied on the New Hampshire cases to uphold a residency requirement. *Woodward v. City of Deerfield Beach,* 538 F.2d 1081 (5th Cir. 1976).

Regarding the compelling state interest test, the *Chimento* court stated, "Semantics aside, the question is resolved judicially by determining what is more important to our form of government; the rights protected by the state law in question or the rights infringed by it." 353 F.Supp. at 1214. The court then went on to find that the state interest in maintaining a responsive and responsible government, as discussed above, was not merely rational but was also compelling. *Sununu* followed the same reasoning.

In several cases, these same arguments have been held insufficient to withstand strict scrutiny. *See, e.g., Wellford v. Battaglia,* 343 F.Supp. 143, 150 (D.Del.1972), *aff'd,* 485 F.2d 1151 (3rd Cir.1973); *Billington v. Hayduk,* 439 F.Supp. 975 (S.D.N.Y.), *aff'd,* 565 F.2d 824 (2d Cir.1977). However, those cases involve elected officials at a lower political level than is at issue here. The only reported decisions involving a candidate for major elective offices and applying strict scrutiny appear to be *Chimento*

and *Sununu* both upholding durational restrictions. While the asserted interest in familiarity with the constituency (and its needs) may be relatively unimportant in an election for, e.g., county supervisor or city commissioner, the restrictive rationale "carries greater weight when applied to a state's highest elective offices." *Chimento, supra,* at 1216. In the instant case, involving the race for governor, the state's interest appears particularly compelling.

Plaintiff might argue here, as above, that the electorate is sufficiently equipped to detect inadequate candidates. However, it is clear that *some* durational residency requirement is constitutionally permissible; it would be "absurd" to strike down all such requirements. *Joseph, supra,* at 1325. Moreover, the state is not required to justify a five-year requirement as opposed to some shorter time period.

> [E]mploying the complete arsenal of strict scrutiny techniques, it would be next to impossible to justify any particular period of residency, since there would always be conceivable exceptions and counterexamples, and there would always be less burdensome alternatives (such as some yet shorter period of residency, or else leaving the question of a candidate's fitness for office to the political process).

*Id.* (footnote omitted). The compelling state interest standard of review "does not require *absolute* perfection or necessity." *Chimento, supra,* at 1214 (emphasis supplied). In this case, the court finds that the standard has been met.

Finally, in considering whether the challenged law is well-tailored to the asserted State ends, this court echoes the sentiments of Justice Rehnquist. An enforced "waiting period" is hardly a significant barrier to candidacy. *Clements, supra,* 102 S.Ct., at 2846. The challenged law does not permanently preclude plaintiff from campaigning for governor; it merely delays his entry into the race until (in this case) the next gubernatorial primary election. Mr. Hankins may yet serve as Gover-

nor of Hawaii, but his time has not yet come.

As the Ninth Circuit noted, while upholding a durational residency requirement,

> We also emphasize that plaintiffs are not barred from becoming eligible candidates in the future. Their candidacy is only delayed—not barred. A period is allotted for them to become familiar—and for the electorate to be assured that the candidates are well acquainted—with the unique problems encountered [in administering the government].

*Howlett, supra,* at 244. The state interest in providing known, and knowledgeable, candidates is thus supported by the minimal nature of the deprivation suffered by would-be candidates.

█ Because the court holds that the challenged provision of the Constitution of the State of Hawaii passes muster under either of the equal protection standards of review, this court finds that plaintiff has failed to show a probability of success on the merits.

There are no factual issues to be resolved in this litigation; the sole dispute centers on the validity of the reasons expressed for the durational residency requirement. The court is not persuaded that plaintiff would be able to present arguments at trial which are not available to him now. Plaintiff has failed to raise sufficiently serious questions going to the merits to make them fair ground for litigation. Accordingly, plaintiff having failed to meet a critical element of the test for injunctive relief at either end of the continuum, the motion for a preliminary injunction shall be, and the same is, DENIED.

IT IS SO ORDERED.